**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **JOHN RICHARD HENDERSON,**<br>**Individually and On Behalf of Similarly**<br>**Situated Individuals**<br><br>       **Plaintiffs,**<br><br>**V.**<br><br>**WOODGRAIN MILLWORK, INC.  d/b/a**<br>**WOODGRAIN DISTRIBUTION**<br>       **Defendant.** | **CIVIL ACTION NO. 4:16-cv-01761**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S MOTION FOR CONDITIONAL**
**CERTIFICATION AND NOTICE WITH MEMO IN SUPPORT**

### I.  SUMMARY

The Fair Labor Standards Act ("FLSA") permits any employee to bring an action to recover wages owed to "himself … and other employees similarly situated." 29 U.S.C. § 216(b). With this Motion, Plaintiff John Richard Henderson ("Henderson" or "Plaintiff") seeks conditional certification of a collective action consisting of:

> **"All Delivery Drivers driving a local route employed by Woodgrain in the past three (3) years who were not compensated for overtime."**

Conditional certification is appropriate here because the employees that Henderson seeks to represent performed similar job duties and were all subject to the same company-wide pay and exemption policies (regardless of any allegedly individualized factors) and are thus similarly situated. Because, as will be shown in greater detail below, Henderson has met the lenient standard

1

for conditional certification, he respectfully requests that this Court conditionally certify this case as a collective action and authorize notice to the class of Delivery Drivers who are owed overtime wages. Notice at this stage is critical so that these workers can make an informed decision about whether to join this suit and stop the statute of limitations from running on their claims for unpaid overtime compensation.[1]

## II.   **FACTS**

Woodgrain Millwork, Inc.  ("Woodgrain") is a logistics company that distributes various moldings and millworks products.[2]  Woodgrain employs delivery drivers to transport these wood products from its warehouse to its local customers.  *Exhibit 1*, Declaration of Dale Sellers 28:16-29:12.  Plaintiffs John Richard Henderson ("Henderson") and Randy Flores ("Flores") worked for Woodgrain as delivery drivers.  *Exhibit* 2, Declaration of John Richard Henderson, ¶2; *Exhibit* 3, Declaration of Randy Flores, ¶ 2.  These delivery drivers drive assigned routes in the Greater Houston Area.  *Exhibit* 1, 17:23-19:4.  None of Woodgrain's delivery drivers are paid for overtime worked.  *Exhibit* 1, 45:15-46:3; *Exhibit* 2, ¶4; *Exhibit* 3, ¶4.  There are approximately 10-12 delivery drivers that are based out of Woodgrain's Houston Distribution Center.  *Exhibit* 1, 10:4-11:1.  Plaintiffs, as well as other similarly-situated Delivery Drivers worked considerable overtime

---

[1]        Unlike Rule 23 class actions in which the statute of limitations is tolled for all potential class members with the filing of the complaint, the statute of limitations under the FLSA is not tolled with the commencement of the action or even with an order granting conditional certification. *Fisher v. Michigan Bell Telephone Co.*, C.A. 2:09-cv-10802, 2009 WL 3427048, at *8 (E.D. Mich. Oct. 22, 2009). Rather, the statute of limitations continues to run on each individual's claim until they file their written consent to join the action with the court. Id.; see also 29 U.S.C. § 216(b) ("No employee shall be a party Plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Although the notice process does not stop the statute of limitations, it does, at a minimum, notify the potential class members of the case, and that the statute of limitations is running on their claims. Fisher, 2009 WL 3427048, at *8 (citing *Hoffmann-La Roche*, 493 U.S. at 170).

[2] http://www.woodgrain.com/

hours. *Exhibit* 2, ¶5; *Exhibit* 3, ¶ 5. For these and the following reasons, conditional certification is appropriate.

## III.   CONDITIONAL CERTIFICATION IS APPROPRIATE.

### A.   The Standard for Conditional Certification is Lenient.

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). District courts have broad discretion to allow a party asserting FLSA claims on behalf of others to notify potential Plaintiffs that they may choose to "opt-in" to the suit. See *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Court-authorized notice protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Id*. at 170-172.

The method adopted by this Court for determining whether to certify a collective action under § 216(b)—the *Lusardi* two-tiered approach—involves a preliminary decision regarding notice to putative class members. *Davida v. Anderson Perforating, Ltd.,* 2013 WL 3356046, *1 (W.D. Tex. July 3, 2013). In the first stage, called the notice stage, the district court makes an initial determination whether notice of the action should be sent to potential class members. *Id*. This determination is based solely on the pleadings and affidavits, and the standard is a lenient one typically resulting in conditional certification of a representative class to whom notice is sent and who receive an opportunity to "opt in." *Id*. (emphasis added).

3

In applying the lenient standard, the Court inquires as to whether Plaintiff has provided sufficient evidence that the class member representatives are "similarly situated in terms of job requirements and similarly situated in terms of payment provisions" or whether the Plaintiff substantially alleged that the potential class members were "together the victims or a single decision, policy, or plan." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214, n. 8 (5th Cir. 1995); *Davida v. Newpark Drilling Fluids, LLC*, SA-14-CA-552-HJB, ECF No. 47 (W.D. Tex. 2015); *Mateos v. Select Energy Servs., LLC*, 977 F. Supp. 2d 640, 643 (W.D. Tex. 2013); *Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d 693, 698 (W.D. Tex. 2009) (same).

Importantly, plaintiffs need only show that they are similarly situated, not that they are identically situated. As one District Court in the Fifth Circuit recently noted, "the court need not find uniformity in each and every aspect of employment to determine [that] a class of employees is similarly situated. The remedial nature of the FLSA and § 216 militate strongly in favor of allowing cases to proceed collectively." *Tolentino v. C&J Spec-Rent Services, Inc.*, C.A. 2:09-cv-00326, 2010 WL 2196261, at *4 (S.D. Tex. May 26, 2010) (Jack, J.) (citing *Albanil v. Coast 2 Coast, Inc.,* C.A. 4:08-cv-00486, 2008 WL 4937565, at *3 (S.D. Tex. Nov. 17, 2008)).

Further, the plaintiffs need only demonstrate "a reasonable basis" for the allegation that a class of similarly situated persons exists. See, e.g., *Ortiz v. Rain King, Inc.*, C.A. 4:02-cv-04012, 2003 WL 23741409 (S.D. Tex. Mar. 10, 2003) (Lake J.) (one declaration and the complaint sufficient); *Alba v. Madden Bolt Corp.*, C.A. 4:02-cv-01503, 2002 WL 32639827 (S.D. Tex. June 5, 2002) (Hoyt J.) (one declaration sufficient); V*illatoro v. Kim Son Restaurant,* 286 F. Supp. 2d 807, 810-11 (S.D. Tex. 2003) (Atlas J.) (one declaration plus employer documents sufficient).

4

Finally, numerosity is not a requirement for conditional certification. Some courts have found a plaintiff must show that similarly-situated individuals want to opt in to the lawsuit, but others have rejected this non-statutory element. S*ee, e.g., Edwards v. Coaches Sports Bar & Grill*, No. 4:15-cv-01811, Dkt. No. 17 (March 3, 2016) (Lake, S.); *Dreyer v. Baker Hughes Oilfield Operations, Inc*., No. H-08-1212, 2008 WL 5204149, *3 (S.D. Tex. Dec. 11, 2008) (unpublished); *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007). The opt in requirement is not statutory and has not been required by any higher court opinion. "Rather, the Fifth Circuit's discussion of the Lusardi approach only requires, at the first stage, that 'putative class members' claims [be] sufficiently similar to merit sending notice of the action to possible members of the class.'" *Edwards,* p. 11 (internal citations omitted). However, the fact that another individual in addition to Mr. Henderson has opted in to this lawsuit is demonstrative of the fact that a class of aggrieved individuals exists.

### B.  All Delivery Drivers Are Similarly Situated With Regard to Payment Provisions.

Plaintiff Henderson has established that he and the potential class members are "similarly situated in terms of payment provisions." *Mateos*, 977 F. Supp. 2d at 643. Specifically, Henderson has definitively shown that he and all of the potential class members were not compensated with the time-and-a-half overtime premium for all hours greater than 40 in a given workweek. *Exhibit* 1, 45:15-46:3; *Exhibit* 2, ¶4; *Exhibit* 3, ¶4. Indeed, Woodgrain fully admits that across the board, it has a company-wide policy of failing to compensate delivery drivers for overtime. *Exhibit* 1, 45:15-46:3.   As such, Henderson has proven that a common policy affects Plaintiff and all other similarly situated individuals.

### C.     All Delivery Drivers Are Similarly Situated in Regard to Job Duties.

Henderson has also established that he and the potential class members are "similarly situated in terms of job [duties and] requirements." *Mateos*, 977 F. Supp. 2d at 643. The Delivery Drivers all drive (or drove) local assigned routes delivering wood products to Woodgrains customers in the Greater Houston Area.  Exhibit 1, 17:23-19:4; 45:15-46:15; Exhibit 2, ¶¶2 & 4; Exhibit 3¶¶2 & 4.  Moreover, the daily job duties of Henderson and the potential class members all involved the same job duties.

As Randy Flores explains, "[m]y job title is delivery driver.  My job duties include transporting and delivering molding from the warehouse to clients like Home Depot."  *Exhibit 4*, Plaintiff Randy Flores' Responses to Interrogatories, No. 2.  Henderson likewise testified that he delivered wood products along the same local driving route weekly.  See Doc. 36-3, Exhibit C, Deposition of John Henderson, 61:22-62:12.  The evidence presented therefore shows that the job duties of the potential class members were uniform throughout their employment with Defendant.  Henderson has met the lenient conditional certification standard.

### D.     Merits-Based Issues Are Not Relevant on Conditional Certification.

A disagreement about the merits of Henderson's claim(s) are not grounds for denying conditional certification. It is well-established that "courts are not to engage in merits-based analysis at the notice stage of a collective action." *Lay v. Gold's Gym, Int'l, Inc*., Cvs. Nos. SA-12-CV-754- DAE, SA-12-CV-930-DAE, 2013 WL 5595956, at *5 (W.D. Tex. Oct. 4, 2013); see also Ex. 2 at p. 7 ("A determination into the exemption status of each putative class member would go to the merits of the case"); *Jones v. JGC Dallas LLC*, 2012 WL 6928101 (N.D. Tex. Nov. 29,

2012) adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013); see also, *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 861(S.D. Tex. 2012) ("courts do not review the underlying merits of the action in determining whether to conditionally certify"); *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012) (same).

The important point, rather, is that all of the merits-based issues raised by Woodgrain's Answer can be resolved on a class-wide basis. For example, Woodgrain contends that Henderson and the potential class members were all exempt from the overtime provisions of the FLSA.  Doc. 26, p. 9, ¶ 3.  By pleading this defense as to all potential class members, Woodgrain essentially admits that this issue can be determined as an issue common to the class. Because it is essentially undisputed that Henderson and the potential class members are similarly situated for the purposes of conditional certification, Henderson's motion should be granted.

**E.     The Motor Carrier Act Exemption Does Not Apply**

Although Plaintiff urges the court that consideration of the merits is not appropriate at this time, Defendant will undoubtedly argue that the Motor Carrier Act ("MCA") exemption precludes certification. In anticipation, Plaintiff will show that at this stage, Defendant cannot prove that the MCA exemption precludes certification and liability for damages for all of the class members.

1.     ***The FLSA Is A Remedial Statute That Should Be Construed Liberally***

Section 7 of the FLSA entitles employees to overtime premium pay equaling one and one-half times their regular pay rate for hours worked over 40 per week. See 29 U.S.C. § 207(a)(1). In *Parker v. NutriSystem, Inc*., 620 F.3d 274 (3d Cir. 2010), the Third Circuit described the public policy underlying the overtime pay mandate:

Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Ark.-Best Freight Sys., Inc*., 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981) (quoting 29 U.S.C. § 202(a)). The Act was designed "to ensure that each employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of overwork as well as underpay.'" *Id*. (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt)).

*Id*. at 279; *see also A.H. Phillips v. Walling*, 324 U.S. 490, 493, (1945); *Barrentine v. Arkansas-Best Freight Sys., Inc*., 450 U.S. 728, 739 (1981). The Supreme Court has held that this "broad remedial goal of the [FLSA] should be enforced to the full extent of its terms." *Sperling*, 493 U.S. at 173.

An employer bears a substantial burden to show that its employees fall within the § 13(b)(1) exemption and thus stand outside the FLSA's overtime provisions. *Songer*, 618 F.3d at 471; *Gonzalez v. Smith International, Inc*., 2010 WL 8971797, at * 10 (S.D. Tex. Jan. 29, 2010). The employer must prove that the employee falls "plainly and unmistakably" within the terms of the exemption. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945); *Owens v. CEVA Logistics/TNT*, 2012 WL 6691115, at * 5 (S.D. Tex. Dec. 21, 2012). Moreover, because of the FLSA's remedial goals, its exemptions—including the Motor Carrier Act exemption—must be read narrowly. *Gonzalez*, 2010 WL 8971797, at * 10.

### 2. *Woodgrain Local Delivery Drivers Were Only Engaged In Intrastate Travel.*

Under the MCA, an employee is exempt from the FLSA if the Secretary of Transportation has power to establish qualifications and maximum hours of service. *Siller v. L & F Distributors, Ltd.,* 109 F.3d 765 (5th Cir. 1997). According to the regulations promulgated by the FLSA, the

8

Secretary of Transportation has power to establish qualifications and maximum hours of service if employees are: (1) employed by carriers whose transportation of property or passengers is subject to the Secretary of Transportation's jurisdiction under the MCA and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways or passengers or property in ***interstate or foreign commerce*** within the meaning of the MCA. 29 C.F.R. § 782.2(a).

Although the Motor Carrier Act defines interstate commerce as "between a place in a state and a place in another state," courts have interpreted this definition to include the actual transport of goods in the "practical continuity of movement." *Merchants Fast Motor Lines, Inc. v. I.C.C.,* 528 F.2d 1042, 1044 (5th Cir. 1976).   Whether transportation is interstate or intrastate is determined by the shipper's "***fixed and persistent transportation intent***" at the time of the shipment, and is ascertained from all of the facts and circumstances surrounding the transportation. *Glanville v. Dupar, Inc.,* 2009 WL 3255292, at *9 (S.D. Tex. Sept. 25, 2009).

The Interstate Commerce Commission promulgated a three-part test to assist in determining the shipper's "***fixed and persisting intent***" at the time of shipment.   *Foxworthy v. Hiland Dairy Co.,* 997 F.2d 670, 672–73 (10 Cir. 1993).  The test is stated in terms of what is ***not*** a "***fixed and persisting intent***" to ship goods in interstate commerce, as follows:

      i.     At the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and

ii.    The terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and

iii.   Transportation in furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage.

29 C.F.R. § 782.7(b)(2).

Woodgrain has stated that it does not the majority of its shipments are **not** based on a specific order, but based on *insights* into customer's future or prospective needs.  Exhibit 1, 61:22-62:5.  Woodgrain orders its wood products in bulk to store in its Houston Distribution Center. Exhibit 2, ¶ 6; Exhibit 3, ¶6.  Woodgrain keeps a stock pile of all products sold by its various customers, including Home Depot.  Exhibit 2, ¶ 10.  The majority of Woodgrain's customers do not provide it with any prediction as to what inventory they might need.  Exhibit 1, 61:22-62:12. Woodgrain maintains that ordered wood grain products are housed in the Houston Distribution Center for an average of 50 days.  *Id*. at 58:24-60:9. Delivery drivers then deliver the wood products from the Houston Distribution Center to Woodgrain's customers.  *Id.* at 28:16-29:12. Under the applicable standard, Woodgrain clearly lacks the fixed and persisting intent as it has no specific customer, the terminal storage is a distribution point, and further transportation is arranged *after* sale.

### 3.    *Woodgrain's Distribution Centers Housed Products For Years At A Time.*

Even products transported in the "practical continuity of movement" can lose their interstate character where they are stored for lengthy periods of time. *See Siller v. L & F Distributors, Ltd.,* 109 F.3d 765, *2 (holding that delivery of goods stored at an in-state warehouse

between **6 to 28 days** before being delivered to consumer was interstate; "placing goods in a warehouse interrupts, but does not necessarily terminate the goods' interstate journey"); *Foxworthy v. Hiland Dairy Co.,* 997 F.2d 670 (10th Cir. 1993) (applying motor carrier exemption to driver making in-state deliveries for dairy company where products were stored no more than **three days** before delivery, company maintained control over goods during storage, and driver also picked up empty crates for return to out-of-state processing plant); *Roberts v. Leonard W. Levine,* 921 F.2d 804, 814 (8th Cir. 1990) (**six-month storage** period in the company's warehouse did not disrupt the company's fixed and persistent intent that the product continue in interstate commerce to its customers).

Put another way, "if a company places orders with an out-of-state vendor for delivery to specified intrastate customers, a temporary holding of the goods within an intrastate warehouse for processing does not alter the interstate character of the transportation chain culminating in delivery to the customer. If, on the other hand, **a company places orders with an out-of-state vendor, with delivery to the company's intrastate warehouse for future delivery to customers yet to be identified, the transportation chain culminating in delivery to the customer is considered <u>intrastate in nature</u>**." *Watkins v. Ameripride Servs.*, 375 F.3d 821, 826 (9th Cir. 2004) (*emphasis added*). Henderson and Flores have both testified that they recall seeing wood products at the Woodgrain Houston Distribution Center that appear to have been **stored for years**. Exhibit 2, ¶7; Exhibit 3, ¶ 7.

## IV.   THE IMPORTANCE OF NOTICE TO THE CLASS.

### A.   The Purpose of Providing Notice to the Class.

11

As previously touched upon, a collective action allows plaintiffs the advantage of lower individual costs and benefits the judicial system by efficient resolution of common issues of law and fact arising from the same alleged activity in a single proceeding. *Sperling*, 493 U.S. at 170. However, these benefits "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id*. When a collective action is filed, courts have the managerial responsibility to ensure that the joinder of additional plaintiffs is accomplished in an efficient and proper manner. *Id*. at 170-71. Timely, accurate notice is also important because the action is not considered commenced for purposes of the statute of limitations until the date on which an employee's written consent is filed with the court. See *McLaughlin v. Boston Harbor Cruises, Inc*., 2006 WL 1998629, *1-2 (D.Mass. Jul. 17, 2006).

**B.   Notice to the Potential Class is Appropriate in this Case.**

Henderson has clearly exceeded the standard for obtaining collective certification of this case. To facilitate the Notice process and preserve the rights of those who have not yet opted in, Henderson has attached a proposed Notice and proposed Consent form to be approved by the Court.  Exhibit 5. These forms are based on various Notice and Consent forms previously approved by District Courts, though they have been modified for this particular case. Anderson seeks to notify a group of potential plaintiffs described as follows:

**"All Delivery Drivers driving a local route employed by Woodgrain in the past three (3) years who were not compensated for overtime."**

Additionally, Henderson seeks an Order from this Court adopting the following

schedule:

| DEADLINE | SUBJECT |
|---|---|
| 10 Days from Order Approving Notice to Potential Class Members | Woodgrain to provide to Henderson's counsel in an Excel Spreadsheet the following information regarding all Delivery Drivers employed by Woodgrain in the last three (3) years: Last Name, First Name, Last Known Address, City, State, Zip Code, Last Known E-Mail Address, Last Known Telephone Number, Beginning Date of Employment, and Ending Date of Employment (if any).[3] |
| DEADLINE | SUBJECT |
| 20 Days from Order Approving Notice to Potential Class Members | Henderson's Counsel shall send a copy of the Court approved Notice and Consent Form to the Potential Class Members by regular First Class U.S. Mail and by e-mail. |
| 90 Days from Date Notice is Mailed to Potential Class Members | The Potential Class Members shall have 90 days to return their signed Consent forms to Henderson's counsel for filing with the Court. |
| 30 Days from Date Notice is Mailed to Potential Class Members | Henderson's Counsel is authorized to mail and e-mail a second identical copy of the notice/consent form to the |

---

[3] Courts routinely require this information and allow the issuance of notice through the requested conduits. See, e.g., Ex. 4; *Beall v. Tyler Technologies, Inc.,* No. Civ. A. 2-08-CV-422, 2009 WL 3064689, at *1 (E.D. Tex. Sept. 23, 2009) (court granted class notice via email and later compelled the employer to produce all email addresses, both personal and work); see also *Davis v. Westgate Planet Hollywood Las Vegas, LLC,* No. Civ. A. 2:08-CV-00722-RCJ-PAL, 2009 WL 102735, at * 15 (D. Nev. Jan. 12, 2009) (court granted circulation of class notice via both U.S. mail and email).

| | Potential Class Members reminding them of the deadline for the submission of the Consent forms. |
|---|---|

### C.     Defendant Should Be Prohibited from Discouraging Potential Class Members from Joining the Suit During the Opt-In Period.

The FLSA expressly prohibits employers such as Woodgrain from dissuading potential class members from exercising their rights. 29 U.S.C. § 215(a)(3). Henderson specifically requests the Court to enter an order stating the following: "Defendant is hereby prohibited from communicating, directly or indirectly, with any current or former employees about any matters which touch or concern the settlement of any outstanding wage claims, or other matters related to this suit, during the opt-in period. Defendant shall so instruct all of its managers. This order shall not restrict Defendant from discussing with any current employee matters that arise in the normal course of business." *Alba*, 2002 WL 32639827, at *1

### V.     CONCLUSION.

Henderson has met the lenient standard for conditional certification. The Court should therefore conditionally certify this collective action and authorize notice to the potential class members.

Respectfully submitted,

TRAN LAW FIRM

/s/ *Trang Q. Tran*

Trang Q. Tran
Federal I.D. 20361
2537 S Gessner Rd., Suite 104
Houston, Texas 77063
(713) 223-8855 Telephone
(713) 623-6399 Facsimile
ttran@tranlawllp.com

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

The undersigned certifies that he conferred with opposing counsel, Russell R. Zimmerer, on June 29, 2017, prior to filing this motion and Defendant is opposed.

/s/ *Trang Q. Tran*

Trang Q. Tran

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been

forwarded to all counsel of record via the Court's Electronic Filing System and electronic mail

on June 30, 2017 as follows:

***<u>Via ECF & Electronic Mail</u>***

Kimberly R. Miers
Texas State Bar No. 24041482
Russell R. Zimmerer
Texas State Bar No. 24063988
**LITTLER MENDELSON, P.C.**
A Professional Corporation
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX 75201
214.880.8100
214.880.0181 (Fax)
kmiers@littler.com
rzimmerer@littler.com

**ATTORNEYS FOR DEFENDANT**

/s/ *Trang Q. Tran*

Trang Q. Tran

16